UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SIMEON WILSON,

                Plaintiff,                      **COMPLAINT**

           - against -                      **JURY TRIAL DEMANDED**

CARIBBEAN AIRLINES LIMITED,
                                                                Docket No.:
                Defendant.
------------------------------------------------------------------X

        Plaintiff Simeon Wilson, by and through his counsel, Giskan Solotaroff & Anderson LLP, for his Complaint against Defendant Caribbean Airlines Limited, alleges as follows:

### PRELIMINARY STATEMENT

    1.    This is a civil action, filed under the diversity jurisdiction of the Court, for negligence on the part of Defendant Caribbean Airlines Limited ("Caribbean Airlines").

    2.    Plaintiff Simeon Wilson is a 50-year-old man who, prior to October 7, 2018, had never been in any type of legal trouble.  In October 2018, Mr. Wilson flew on Caribbean Airlines from Cheddi Jagan ("Cheddi") International Airport in Guyana to John F. Kennedy ("JFK") International Airport in New York.  He had just spent a week in Guyana visiting his elderly father and was returning home to New York.

    3.    Caribbean Airlines, while in exclusive possession and control of Mr. Wilson's suitcase, negligently allowed someone to steal the suitcase, break into it, and insert illegal drugs.  As a result, when Mr. Wilson arrived in New York and retrieved his suitcase from baggage claim he was arrested, detained, and charged with federal drug felonies.

    4.    Mr. Wilson was ultimately fully exonerated of all criminal charges, but he suffered severe and lasting harm as a consequence of Defendant's negligence.

## PARTIES, VENUE, AND JURISDICTION

5. Plaintiff is domiciled in Queens County, New York, and is a citizen of the United States pursuant to 28 U.S.C. § 1332.

6. Defendant Caribbean Airlines, whose principal office is located in Trinidad and Tobago, is a foreign business corporation that is incorporated in Trinidad and Tobago. Caribbean Airlines is authorized to conduct business in the State of New York.

7. This Court has jurisdiction over Plaintiff's claims based on the diversity of citizenship of the parties and the amount in controversy exceeding $75,000, pursuant to 28 U.S.C. § 1332.

8. Venue is properly before this Court pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claim occurred in this District.

9. This Court has personal jurisdiction over Defendant because it conducts business in New York State.

## FACTUAL ALLEGATIONS

10. Simeon Wilson is a 50-year-old man lives and works in Queens, New York.

11. Prior to October 7, 2018, Mr. Wilson had never been in trouble with the law; he had never even received a traffic ticket, let alone been arrested or charged with a crime.

12. On September 30, 2018, Mr. Wilson flew from New York City to Guyana to celebrate his father's 85th birthday.  He spent approximately one week in Guyana.

13. Mr. Wilson's return trip to New York was on October 6, 2018, on Caribbean Airlines flight BW 726.  It was an overnight flight that was scheduled to depart at approximately 11:00 P.M.

14. Mr. Wilson arrived at the airport several hours early, at approximately 8:00 P.M.

15. Mr. Wilson entered the airport and approached the Caribbean Airlines check-in counter with his pre-paid ticket.

16. As was the standard procedure, Plaintiff presented his Caribbean Airlines ticket and his suitcase was scanned and secured by Caribbean Airlines personnel, its agents and/or employees, and taken into custody and control of Caribbean Airlines for transfer to a Caribbean Airlines Aircraft bound for New York.

17. When Plaintiff handed his baggage to Caribbean Airlines personnel, the bag was zipped up, closed, and secured.

18. Afterwards, Mr. Wilson passed through airport security, went to the designated gate, and boarded his flight when called.

19. The plane landed at JFK Airport on October 7, 2018, at approximately 5:00 A.M.

20. Mr. Wilson deplaned and walked through the terminal to the designated baggage carousel for his Caribbean Airlines flight. He retrieved his suitcase from the carousel and began to walk away from the baggage claim area.

21. As Mr. Wilson was walking, agents from Customs and Border Protection ("CBP") approached him and said they needed to perform a security check. Mr. Wilson acquiesced. The officers took him to a security counter area, asked him to place his bag on the counter, asked him a few questions, and opened his suitcase.

22. Up until this point, Plaintiff and Caribbean Airlines personnel, its agents and/or employees were the only people who had exercised control over Plaintiff's suitcase from the time he handed the suitcase to the Caribbean Airlines employees at Cheddi until the time he retrieved the suitcases from the baggage carrousel in the JFK terminal.

23. The CBP officers searched his suitcase and found two black plastic bags inside. Plaintiff had never seen the black plastic bags before and did not have any idea how it was possible for something to have gotten into his luggage. From the moment that he dropped off his luggage at the check-in desk at Cheddi to moment that CBP searched his suitcase, he had not had any access to his luggage. Only Caribbean Airlines had access, custody and control over his luggage during that time.

24. Mr. Wilson later learned that the two plastic bags contained 2,000 grams of cocaine. Mr. Wilson had never touched, handled, sold, or even seen drugs in his life. He did not place the cocaine in his bag and does not know who did. Mr. Wilson was in absolute shock to learn there were drugs in his suitcase.

25. Additionally, when the officers opened his suitcase, Mr. Wilson noticed there was a necktie tied around it. The necktie did not belong to Mr. Wilson, he had never seen it before, and he had not tied it around his own suitcase. Groggy from the overnight flight, Mr. Wilson had not noticed the necktie when he had initially retrieved the bag from the carousel.

26. After the two plastic bags were found in Mr. Wilson's suitcase, CBP officers handcuffed Mr. Wilson and patted him down aggressively. The officers took Mr. Wilson's phone, wallet, and all personal belongings. No contraband was found on his body or in his clothes.

27. Mr. Wilson was placed under arrest and told to wait. He remained handcuffed in public. He was humiliated and frightened.

28. Agents from the Department of Homeland Security ("DHS") arrived, took him to another area of the airport, and placed him in a cell. The DHS agents then interrogated Mr. Wilson and threatened him. The agents turned on a recording device and tried to extract a

confession out of Mr. Wilson, who had nothing to confess to because he knew nothing about the drugs in his suitcase.  At this point, Mr. Wilson was terrified.  He was not permitted to contact a family member or attorney during this interrogation.

29. Several hours later, Mr. Wilson was handcuffed, shackled, and taken to the Eastern District of New York courthouse at 225 Cadman Plaza East for his Initial Appearance.  He was charged with two counts of drug trafficking, in violation of 21 U.S.C. §§ 952(a) and 960, felony charges that carry penalties of up to five years in prison plus the possibility of deportation.

30. Mr. Wilson's family posted a $50,000 bond on Mr. Wilson.  He was released from jail and placed on Supervised Release.  Mr. Wilson was required to check in with Pretrial Services twice per month, and federal agents visited his home in Queens.

31. As a result of his arrest, Mr. Wilson was fired from his job as a janitor for Airway LLC, providing maintenance and cleaning services at – coincidentally, ironically – JFK Airport.  Mr. Wilson had worked for Airway for approximately eight years without incident.  He was never absent from work.  He had a stellar performance record at Airway and was respected by his colleagues and supervisors.

32. Mr. Wilson was unable to work while the criminal case was pending, thus depriving him of the ability to earn a living.

33. On December 19, 2018, approximately ten weeks after Mr. Wilson's Initial Appearance, the United States Attorney's Office moved to dismiss all charges.  Upon information and belief, the federal prosecutor determined that Mr. Wilson's luggage had been tampered with while in the sole custody of Caribbean Airlines.  Judge Steven M. Gold granted the motion and all charges against Mr. Wilson were dismissed.

34. As a result of Defendants' negligence, acts, and/or omissions, Plaintiff suffered harm in his professional and personal capacities; severe emotional distress; and economic loss.

35. During the pendency of the criminal case and for many months after, Mr. Wilson suffered from depression and anxiety. He lost 20 pounds and could not sleep. He experienced a "burning sensation" in his stomach almost every night.

36. Mr. Wilson also suffered reputational harm, as word quickly spread to people in both Guyana and in the New York City Guyanese diaspora about Mr. Wilson's arrest. Unfortunately, upon hearing the news of Mr. Wilson's arrest, many people wrongly assumed he was guilty of drug smuggling. Mr. Wilson's family members received threatening messages.

37. Even to this day, when Mr. Wilson travels to Guyana to visit family and reenters the United States through JFK Airport, U.S. Customs officers always pull him aside, take him to a private room, and request the disposition letter from his criminal case (which he has learned to always carry with him). This process is time consuming, frightening, and deeply humiliating.

38. After all criminal charges against Mr. Wilson were dismissed, he obtained employment as an Access-A-Ride driver. The work requires him to drive to and from JFK Airport on a regular basis to pick up and drop off passengers. Each time he drives to or even passes by the airport, he is reminded of his arrest and prosecution, causing him anxiety and stress. Mr. Wilson sought out treatment from a therapist, who told him the he was experiencing a Post-Traumatic Stress response.

39. Unfortunately, Mr. Wilson is not the first traveler between Guyana and the United States who has been the victim of an unscrupulous drug smuggler and a negligent airline. In

fact, a strikingly similar occurrence was the subject of a lawsuit and trial just a few years ago, when another Queens man who had just returned to New York City from Guyana was arrested at JFK Airport after federal agents found two bricks of cocaine in his suitcase. All charges were eventually dismissed. The man brought a civil suit in this Court, the case proceeded to trial, with a significant verdict for the plaintiff. *See Levans v. Delta Airlines, Inc.*, Docket No. 12-CV-00773 (NG) (VMS).

40. Caribbean Airlines was and is aware of the above-described drug flaking scheme, perpetrated by employees and/or agents under its control, and has a duty to protect its passengers and their luggage from such criminal activity.

## **CLAIM FOR RELIEF**
**Negligence**

41. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

42. The above-described occurrence was caused, in whole or in part, by the carelessness, recklessness, and negligence of Defendant, its servants, agents and/or employees, in the securing, protecting and safeguarding of Plaintiff's belongings while in Defendant's custody and control; in violating all applicable rules, laws, regulations and ordinances; in failing to prevent the occurrence complained of herein; and in causing the injuries complained of herein.

43. Defendant, its agents and employees, breached its duty to ensure that baggage placed within its custody and control be protected from third parties and ensuring that the condition and contents of the baggage remain untouched and secured during transport and flight.

44. Defendant's breach of those legal duties caused Plaintiff's severe injuries; but for Defendant's breach, Plaintiff would not have suffered any injuries.

45. The aforesaid occurrence and resulting injuries were caused solely by the carelessness, recklessness and negligence of Defendant, without any contributing fault or negligence on the part of Plaintiff.

46. Defendant's breach of its legal duties was also the legal or proximate cause of Plaintiffs injuries.

47. As a proximate cause of Defendant's negligence, Plaintiff has suffered severe and substantial damages.

48. Plaintiff is entitled to recover all his damages from the Defendant.

49. As a proximate cause of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant:

    A. Awarding Plaintiff compensatory damages, including but not limited to damages for emotional distress, lost income and wages, loss of liberty and physical discomfort, and reputational harm, in an amount exceeding the monetary jurisdictional limits of other lower courts which would otherwise have jurisdiction;

    B. Awarding Plaintiff punitive damages for Defendant's wanton behavior;

    C. Awarding interest, costs, expenses, and disbursements; and

Granting such other legal and equitable relief to the Plaintiff as the Court may deem just and equitable.

## JURY DEMAND

Plaintiff demands trial by jury of all issues as of right by a jury.

Dated: September 24, 2020
New York, NY

**GISKAN SOLOTAROFF & ANDERSON**

_____
Amy E. Robinson, Esq.
90 Broad Street, 10th Floor
New York, New York 10004
(646) 964-9609