UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
SIMEON WILSON,

                Plaintiff,                  **MEMORANDUM AND ORDER**
                                                         Case No. 20-CV-4524-FB-CLP
   -against-

CARIBBEAN AIRLINES LIMITED,

                Defendant.
--------------------------------------------------x

*Appearances:*
*For the Plaintiff:*                               *For the Defendant:*
AMY ROBINSON                          JOHN MAGGIO
Giskan Solotaroff & Anderson LLP     ALLISON M. SURCOUF
90 Broad Street, Second Floor         Condon & Forsyth LLP
New York, New York 10004            7 Times Square
                                                    New York, New York 10036

**BLOCK, Senior District Judge:**

      In this diversity action, Simeon Wilson alleges that Caribbean Airlines Limited ("CAL") negligently handled his baggage, allowing more than two kilograms of cocaine to be planted inside it without his knowledge. CAL moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 and argues that Wilson's claim is barred by the Airline Deregulation Act of 1978 ("ADA"). For the following reasons, the Court agrees and, accordingly, grants the motion.[1]

---

[1] CAL further argues that Wilson's claim is preempted by the Montreal Convention. The Court need not reach that issue.

1

**I**

On October 6, 2018, Wilson traveled by air from Georgetown, Guyana, to New York City. After passing through airport security, he turned over his suitcase to Guyanese officials, who took it to a staging area for loading onto an aircraft operated by CAL. Wilson boarded without incident.

When he arrived in New York, Wilson disembarked, retrieved his suitcase, and went through U.S. Customs. He was selected for a customs inspection, which revealed more than two kilograms of cocaine in his suitcase. He was released on bail the same day; the charges against him were dropped approximately ten weeks later. This lawsuit followed.

**II**

With the ADA, Congress undertook sweeping deregulation of the airline industry. The Act included a preemption provision "[t]o ensure that the States would not undo federal deregulation with regulation of their own." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992). Thus, "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under [the ADA]." 49 U.S.C. § 41713(b)(1).

The Supreme Court has held that the ADA's preemptive effect is generally

broad: "The ordinary meaning of these words ['relating to'] is a broad one . . . and the words thus express a broad pre-emptive purpose." *Morales*, 504 U.S. at 383. But it has only applied that general principle on three occasions. In *Morales*, it held that the Texas Attorney General could not enforce proposed guidelines for airfare advertising. *See* 504 U.S. at 391. Three years later, it held that the ADA preempted a class-action lawsuit claiming violations of Illinois's consumer-protection law in connection with a frequent flyer program. *See American Airlines, Inc. v. Wolens,* 513 U.S. 219 (1995). Most recently, it held that a common-law claim for breach of the implied covenant of good faith and fair dealing was preempted. *See Northwest, Inc. v. Ginsburg*, 572 U.S. 273 (2014). Like the Supreme Court, the Second Circuit has also confined itself to preemption in cases involving what might be described as the economics of the airline industry. *See Air Transport Ass'n of Am. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008) (holding that ADA preempted New York's "Passenger Bill of Rights").

Thus, the task of determining whether more traditional tort claims for personal injuries has fallen to the district courts. In this circuit, they apply the three-part analysis enunciated by then-District Judge Sotomayor in *Rombom v. United Air Lines, Inc.*, 867 F. Supp. 214 (S.D.N.Y. 1994).

Under that analysis, "[t]he threshold inquiry . . . is to define whether the activity at issue in the claim is an airline service." *Id.* at 221. Baggage handling

3

is, without question, an airline service. *See Cuomo*, 520 F.3d at 223 ("A majority of the circuits to have construed 'service' have held that the term refers to the provision or anticipated provision of labor from the airline to its passengers and encompasses matters such as boarding procedures, baggage handling, and food and drink—matters incidental to and distinct from the actual transportation of passengers."). Wilson attempts to avoid that conclusion by arguing that the relevant activity was "securing passengers' baggage from drug trafficking" and "protecting passengers' luggage from having drugs planted in it," Pl's. Mem. of Law 9; however, it is undisputed that those acts were part and parcel of CAL's bargained-for agreement to transport Wilson's luggage.

"[I]f the activity in question implicates a service, the court must then determine whether the claim affects the airline service directly or [only] tenuously, remotely, or peripherally." *Rombom*, 867 F. Supp. at 222 (citing *Morales*, 504 U.S. at 390). "Where a specific state tort claim has only an incidental effect on a service, there is no preemption and the state tort action should continue." *Id.* Wilson again tries to reframe the issue, arguing that "[a]llowing drugs to be placed in a passenger's suitcase is certainly not directly related to safety or to baggage handling—in fact, it is quite the opposite of what a passenger expects to receive from an airline 'service.'" Pl's Mem. of Law 13. But the fact remains that that unfortunate result occurred because, he alleges, CAL failed to take adequate precautions to prevent it. Such a

4

claim obviously directly impacts the airline's baggage handling procedures. *Accord Abdel-Karim v. EgyptAir Airlines*, 116 F. Supp. 3d 389, 405 (S.D.N.Y. 2015) ("Because the plaintiff's claims would require the defendants to adopt heightened and qualitatively different procedures for baggage handling, the effect of the claims would not be tenuous, remote or peripheral." (internal quotation marks omitted)).

Finally, "[t]he third prong of the preemption inquiry is whether the underlying tortious conduct was reasonably necessary to the provision of the service." *Rombom*, 867 F. Supp. at 222. "[T]his prong has been applied only to exempt from preemption actions that are 'outrageous or unreasonable.'" *Weiss v. El Al Israel Airlines, Ltd.*, 471 F. Supp. 2d 356, 361 (S.D.N.Y. 2006). As Judge Sotomayor poignantly put it: "[If the flight] attendant shoots the passenger to obtain quiet, would the passenger's state tort claim be preempted[?]" *Rombom*, 867 F. Supp. at 222.

Analogously, the Court would have no difficulty concluding that intentionally planting drugs in a passenger's suitcase qualifies as outrageous and unreasonable. But Wilson does not allege that. Rather, he claims that CAL negligently failed to prevent it from happening. There has not been any evidence that CAL or its employees were involved in any other way. Thus, the third prong is satisfied. *Accord Hekmat v. U.S. Transp. Sec. Admin.*, 247 F. Supp. 3d 427, 433 (E.D.N.Y. 2017) ("[P]laintiffs have not accused JetBlue of theft. Rather, they accuse JetBlue of negligence arising from its baggage handling procedures, which satisfies the third

prong of the test.").

## III

In sum, the Court concludes that the ADA preempts Wilson's claim. This is a difficult conclusion because it leaves Wilson without a remedy for serious damages arising from a situation for which he bears no fault. Nevertheless, it is clear that the ADA preempts at least some personal injury claims and, for the reasons set forth above, Wilson's claim meets all the criteria under *Rombom*'s well-respected analysis. Perhaps it is some comfort to believe that this case might supply a vehicle by which some higher authority can finally and authoritatively decide the extent of the ADA's preemptive effect on tort claims.

CAL's motion for summary judgment is granted and the case is dismissed.

**SO ORDERED.**

                                                                                /s/ Frederic Block  
                                                                                FREDERIC BLOCK  
                                                                                Senior United States District Judge

Brooklyn, New York  
July 13, 2022